IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GALE SIMMS-MCCREARY, | ) |
| | ) |
| Plaintiff, | )   8:06CV353 |
| | ) |
| v. | ) |
| | ) |
| DIALYSIS CLINIC INC., | )   MEMORANDUM AND ORDER |
| | ) |
| Defendant. | ) |
| | ) |

This matter is before the court on defendant Dialysis Clinic Inc.'s ("DCI") motion for summary judgment, Filing No. 40. Plaintiff Gale Simms-McCreary, an African-American, single-parent female, and resident of Omaha, Nebraska, worked as a patient care technician for DCI, a nonprofit corporation authorized to do business in Nebraska. Plaintiff worked for DCI for approximately eight years, and was the only African-American female employed at her unit. In March 2003, DCI requested that plaintiff work "split shifts," rather than her current hours, and plaintiff expressed her concern about the schedule fitting with her child care arrangements. Plaintiff said she would try the split shift schedule, with the assumption that if it did not work with her schedule, DCI would reassign her to a different shift.

After having worked split shifts for several weeks, plaintiff determined her new schedule reduced the amount of hours she worked, and decreased her "call pay" and responsibilities. Filing No. 1. Further, plaintiff had difficulties with her child care arrangements and her new schedule inhibited her ability to care for her sick parent. In May and June 2003, plaintiff alleges that she made numerous requests to DCI for a shift change. DCI did not assign plaintiff to a different schedule. Plaintiff maintains that DCI did

not pressure or require married, white male employees at DCI with less seniority than plaintiff to work split shifts.

In July 2003, plaintiff was due for an annual review from her immediate supervisor, and in August 2003, plaintiff's supervisor and a DCI administrator conducted plaintiff's annual review meeting. At this meeting, plaintiff received a final written warning for actions plaintiff alleges that were false or inaccurate. This final written warning provided that termination could result without plaintiff's improvement. According to the plaintiff, DCI did not express any concern with plaintiff's job performance prior to this annual review meeting. Plaintiff asserts that similarly situated white male employees at DCI did not receive warnings from DCI for the same actions that plaintiff allegedly committed. After receiving her written warning, DCI reportedly scrutinized plaintiff and made erroneous accusations against plaintiff. Plaintiff allegedly suffered anxiety attacks and situational depression to such a degree that plaintiff's physician recommended that she terminate her employment at DCI. Plaintiff resigned from DCI in August 2003, effective September 2, 2003, and she alleges that DCI then promoted a white, married male employee to her position. According to plaintiff, DCI shortly thereafter changed her replacement's schedule to that of a "straight shift."

Plaintiff brought suit in this court under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, alleging claims of race and sex discrimination (Count I), hostile work environment (Count II), constructive discharge (Count III), and unlawful employment practices under the Nebraska Fair Employment Practices Act (NFEPA), Neb. Rev. Stat. § 48-1101 *et seq*. (Count IV). Filing No. 1. In her complaint, plaintiff requests compensatory damages, liquidated damages for back pay and lost benefits, front pay or reinstatement, attorney fees

and costs, and any other relief the court deems appropriate. *Id.* Jurisdiction is proper under 28 U.S.C. § 1331, providing this court original jurisdiction over all civil actions arising under the Constitution and laws of the United States, and 28 U.S.C. § 1367, permitting this court supplemental jurisdiction over claims related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. DCI filed the motion for summary judgment at issue, and plaintiff opposes the motion.

**Legal Standards**

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Gilbert v. Des Moines Area Cmty. College*, 2007 U.S. App. LEXIS 18755, *8 (8th Cir. 2007). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

Once defendant meets its initial burden of showing there is no genuine issue of material fact, plaintiff may not rest upon the allegations of his or her pleadings but rather

must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). While courts evaluate facts in the light most favorable to the nonmoving party, "in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis Univ.*, 167 F.3d 398, 401 (8th Cir. 1999). In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

**Analysis**

Discrimination

A plaintiff alleging discrimination may survive a motion for summary judgment with one of two methods. *Arraleh v. County of Ramsey*, 461 F.3d 967, 974 (8th Cir. 2006). First, the plaintiff may present direct evidence of discrimination. *Arraleh*, 461 F.3d at 974. Direct evidence shows "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Id.* (internal

quotations and citation omitted).  The *McDonnell Douglas*[1] burden-shifting framework is unnecessary when a plaintiff advances direct evidence of discrimination.  *Id.* at 975.

If the plaintiff lacks evidence of an illegal motive, a plaintiff may also "avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient proof of pretext."  *Id.* at 975.  At the summary judgment stage, courts employ the *McDonnell Douglas* burden-shifting analysis to evaluate Title VII claims.  *Gilbert v. Des Moines Area Cmty. College*, 2007 U.S. App. LEXIS 18755, *10-11 n.1 (8th Cir. 2007).  The first part of the McDonnell Douglas analysis requires that the complainant bear the burden of establishing a prima facie case of discrimination.  *Gordon v. Shafer Contr. Co.*, 469 F.3d 1191, 1196 (8th Cir. 2006).  The burden then shifts to the employer to present a legitimate reason for the allegedly discriminatory action.  *Gordon*, 469 F.3d at 1196.  If the employer carries this burden of production, the burden then shifts back to the plaintiff to rebut the defendant's explanation by showing the proffered reason is actually pretext for unlawful discrimination.  *Id.*

Having reviewed the briefs and the evidence in this case, the court finds that DCI's alleged refusal to transfer plaintiff to a different shift, and the issuance of a final written warning, does not constitute direct evidence of sex, race, or marital status discrimination.  Finding that no direct evidence of discrimination exists, the court must evaluate plaintiff's claim under the framework of *McDonnell Douglas*.  In order to establish a prima facie case of unlawful discrimination under Title VII and section 48-1104 of NFEPA, the plaintiff must show that: (1) she is in a protected class; (2) she was meeting the employer's legitimate

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2003).

Viewing the facts in the light most favorable to the nonmoving party, the court finds that a genuine issue of material fact exists concerning plaintiff's claims under Title VII and section 48-1104.  First, the parties dispute whether the plaintiff in this case suffered an adverse employment action and whether similarly situated employees were treated differently by DCI.  Defendant argues that plaintiff suffered no material change in her duties, responsibilities, or the number of hours that she was scheduled to work per week as a result of her assignment to the split shift.  Defendant also contends that plaintiff's attitude about working the split shift only changed after she experienced personal difficulties, and that DCI had no obligation to reconsider staff assignments.  Plaintiff, however, contends that she lost pay, worked fewer hours, and DCI ignored her repeated requests to change shifts.

Disputes also exist concerning the final written warning.  Plaintiff maintains that DCI papered her personnel file and confronted her with incidents that had long since passed.  According to the plaintiff, DCI's actions, along with the final written warning, pressured plaintiff to quit her job.  DCI claims that plaintiff received the final written warning so that plaintiff could improve her performance and receive a retroactive pay increase.  DCI also maintains that it reviewed plaintiff's performance the same as it reviewed other DCI employees, and that DCI had terminated a married, white, male employee without having previously issued this employee a warning.  As such, the court finds that a factual issue remains concerning whether plaintiff's transfer to the split shift was voluntary or forced and

temporary or permanent. Moreover, it remains contested whether DCI approached plaintiff with performance complaints and issued plaintiff the final written warning to induce the plaintiff to leave her employment at DCI. Both parties dispute whether DCI treated similarly situated employees outside plaintiff's protected class differently. Accordingly, the court finds that plaintiff has established a prima facie case of retaliation for purposes of summary judgment.

Having found that plaintiff has met her burden of establishing a prima facie case of discrimination, the court turns to the second step of the *McDonnell Douglas* framework. DCI argues that plaintiff voluntarily switched to the split shift and that DCI had a legitimate, nondiscriminatory reason for issuing plaintiff a final written warning: they wanted to give plaintiff an opportunity to address areas of concern before a final decision was made regarding her pay raise. Filing No. 41. DCI asserts that a final warning was appropriate given the nature and the number of concerns plaintiff's supervisors had about plaintiff's performance. The court finds that this rationale satisfies the second step of the *McDonnell Douglas* test.

DCI contends that at the pretext stage of *McDonnell Douglas*, no evidence exists to refute DCI's lawful justification for issuing plaintiff the final written warning. According to DCI, it consulted with its human resources department for guidance on how to handle plaintiff's annual review. DCI argues that plaintiff's written warning was based solely on plaintiff's performance and that no evidence exists to suggest that similarly situated employees outside plaintiff's protected class were treated differently. Plaintiff argues that despite DCI's alleged problems with her performance, she received no verbal counseling about any incidents, DCI littered her personnel file with backdated negative reports, and

7

DCI used these incidents to discipline plaintiff and threaten her with termination. According to plaintiff, DCI did not follow its usual disciplinary policy and treated other employees differently. As such, the court finds that in this final step of the analysis, factual issues remain concerning whether plaintiff has established pretext. Accordingly, defendant's motion for summary judgment is denied as to plaintiff's discrimination claims.

Hostile Work Environment & Constructive Discharge

For the plaintiff to succeed on her hostile work environment claim, she must establish that: (1) she is a member of a protected class; (2) she was exposed to unwelcome harassment; (3) the harassment was based on a protected characteristic of the plaintiff; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassing behavior, but failed to take proper action to alleviate it. *Arraleh v. County of Ramsey*, 461 F.3d 967, 978 (8th Cir. 2006).

Conduct must be severe and pervasive, both objectively and subjectively, to prove that harassment altered the terms and conditions of a person's employment. *Arraleh*, 461 F.3d at 979. Courts tasked with determining whether a work environment is hostile must examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation omitted).

A constructive discharge exists "when an employer deliberately renders an employee's working conditions intolerable with the intent of forcing the employee to leave the employment." *Spears v. Missouri Dep't of Corrections & Human Resources*, 210 F.3d 850, 854 (8th Cir. 2000). A determination of whether working conditions were intolerable

must be based on an objective standard, rather than the employee's subjective feelings. *Spears*, 210 F.3d at 854. A poor performance evaluation is insufficient to render a working environment intolerable. *Id.* at 855.

DCI contends that no evidence exists in this case to show that plaintiff suffered from frequent harassment on the basis of her race, gender, or marital status. DCI further maintains that any alleged harassment did not physically threaten the plaintiff, humiliate her, or cause interference with her work performance. DCI alleges that plaintiff never informed any person at DCI about any discriminatory or harassing behavior, even though plaintiff has reviewed and participated in DCI's training and discussions concerning harassment in the workplace.

Plaintiff, however, asserts that DCI created a hostile work environment that amounted to constructive discharge. Plaintiff argues that DCI did not treat white, married male employees the same way it treated plaintiff. Specifically, plaintiff contends that DCI did not ask any other employee to work the split shift. Also, plaintiff alleges that DCI used negative reports in plaintiff's personnel file to threaten plaintiff, and DCI did not do this to any other employees. According to plaintiff, because of this treatment, she suffered panic attacks, and she cried and vomited at work.

The court finds that sufficient issues of fact remain as to plaintiff's claims of constructive discharge and hostile work environment. At this stage of the proceedings, it remains unclear from the evidence whether plaintiff suffered from harassment, whether such harassment was based on plaintiff's protected characteristics, and if the harassment occurred, whether it affected plaintiff's work employment. Further, an issue of fact exists whether DCI's alleged actions were deliberate and designed to force plaintiff to quit her

employment at DCI.  Surely, the court agrees with the law that a final written warning is insufficient to render DCI a hostile work environment.  However, taking as true plaintiff's allegations of threats of termination, backdating and reporting of past incidents, and littering of plaintiff's personnel file, the court finds that constructive discharge may exist in this case.  Accordingly, defendant's motion for summary judgment is denied as to plaintiff's claims of hostile work environment and constructive discharge.

THEREFORE, IT IS ORDERED that defendant's motion for summary judgment, Filing No. 40, is denied.

DATED this 30th day of August, 2007.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge